Christy Byrd, the minor daughter of Wayne and Betsy Byrd, sued John Knight, a fellow student with Byrd at Brantley High School; Elizabeth Sullivan, the principal of Brantley High School; and the Crenshaw County Board of Education ("the Board"), after Knight punched Byrd in the face on the premises of Brantley High School, which is operated by the Board. Byrd alleged assault and battery against Knight, negligence and invasion of privacy against Sullivan, and breach of implied contract against the Board. The trial court dismissed Byrd's implied contract claims. Byrd amended her complaint to claim damages pursuant to 42 U.S.C. § 1983 against Sullivan and the Board. The trial court then entered a summary judgment *Page 832 
in favor of Sullivan and the Board on all claims; the trial court made its judgment final pursuant to Rule 54(b), Ala.R.Civ.P. Byrd's claims against Knight are not at issue on appeal; she appeals from the trial court's judgment in favor of Sullivan and the Board.
The facts are as follows: Around 10:30 a.m. on January 8, 1993, Byrd was riding a school bus back to Brantley High School from a school vocational building in Luverne. During that ride, Byrd sat and talked with friends near the back of the bus; while doing so, she uttered an expletive. A student who overheard Byrd's words told Knight that Byrd had referred to him by using a racial epithet. After reaching Brantley High School, Byrd was standing outside the school when Knight suddenly approached her and hit her in the face four times.
Byrd then went into a bathroom. Sullivan heard about the incident from a janitor and went into the bathroom to check on Byrd. Sullivan maintains that she saw no blood on Byrd's face, although she said she noticed that Byrd's face was red. Byrd also states that there were no visible signs of blood from her injury. Sullivan then spoke with Byrd and Knight in the principal's office about the incident. Byrd admitted using an expletive in her conversation with her friends, but insisted that she did not direct any expletive or racial epithet toward Knight. Sullivan then suggested that Byrd should apologize to Knight. According to Byrd, she told Knight that she "was sorry if he thought [she] called him that." Sullivan maintains that Knight apologized also; according to Byrd, he did not.[1]
Byrd requested permission from Sullivan to telephone her home, but Sullivan did not allow her to do so. Sullivan then gave her a bag of ice for her face. Byrd did not tell Sullivan that she needed medical attention, "[b]ecause," Byrd said, "after she told me I couldn't call home I just hushed [and didn't] say nothing else." Sullivan did not seek medical attention for Byrd, because, she says, "I did not see any injury that constituted [a need for] medical help." Sullivan said that she determines on a case-by-case basis those school situations she thinks require medical attention, and she said that she considers medical attention particularly important in cases involving "bloody noses" or "any broken places on [the] skin."
After leaving school on the afternoon of January 8, Byrd went to the office of Dr. Tom Sanders, a dentist; he testified that he found no cuts on her mouth, but noticed that her upper lip was bruised. He prescribed pain pills and directed Byrd to use ice packs. Dr. Sanders testified that the delay between the incident and his examination caused no worsening of Byrd's condition, except to permit minor swelling. On January 11, Dr. William Beall, another dentist, examined Byrd; he found a cut lip and a black eye. He made X-rays, which further showed a small nondisplaced fracture in Byrd's jaw, which did not require major treatment. Dr. Beall testified that Byrd's delay in seeing him did not affect Byrd's course of treatment.
Byrd's claims are primarily based on Sullivan's actions after Knight's attack. She states that from Sullivan "she received no medical attention, a refusal to call home, an unjustified disciplinary lecture, a forced confrontation with her attacker, and [that she was required] to apologize to him for no reason," and that Sullivan's actions were negligent and invaded her privacy. Byrd notes that the Board's student health services policy requires that parents be notified "in cases of illness or injury requiring emergency treatment," and she argues that the school board, acting through Sullivan, breached its alleged implied obligations to "arrange proper and prompt medical [care] . . . and not to cause or allow a wrongful intrusion into a student's privacy."
To begin, we hold that Sullivan is entitled to immunity from Byrd's negligence and invasion of privacy claims. Article I, § 14, Ala. Const. (1901), provides that the State of Alabama shall not be made a defendant "in any court of law or equity"; this is the constitutional basis for the doctrine of sovereign immunity. County boards of education, as local agencies of the State, partake of this immunity. Hutt v. Etowah County *Page 833 Bd. of Educ., 454 So.2d 973, 974 (Ala. 1984). An individual who, while acting as a State agent, engages in the exercise of a discretionary function may also be entitled to qualified immunity. Nance v. Matthews, 622 So.2d 297 (Ala. 1993); see alsoFaulkner v. Patterson, 650 So.2d 873 (Ala. 1994). "Discretionary acts" have been defined as
 "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take . . . [;] [those requiring] exercise in judgment and choice and [involving] what is just and proper under the circumstances."
Black's Law Dictionary 467 (6th ed. 1990); see also Smith v.Arnold, 564 So.2d 873, 876 (Ala. 1990); Nance v. Matthews, supra.
Sullivan was performing a discretionary function when exercising her judgment in handling Knight's attack upon Byrd and in handling Byrd's injury. Sullivan, who has been a teacher or principal in Crenshaw County for 30 years, made her decisions based upon her experience in handling student altercations and based upon her evaluation of Byrd's injuries. As noted above, both Sullivan and Byrd stated that there were no visible signs of blood on Byrd's person. After evaluating the situation, Sullivan determined that Byrd's injuries did not require emergency medical treatment. This decision is supported by the testimony of Byrd's dentists. In retrospect, one could perhaps criticize Sullivan's refusal to allow Byrd to telephone home after being attacked by Knight; certainly, her decision to make Byrd apologize to Knight seems curious. However, these are the types of decisions made by teachers, principals, and other school personnel every day, using their best judgment and evaluation of the circumstances. Sullivan's decisions in this matter were "personal deliberation[s], decision[s] and judgment[s]" in the performance of her job; therefore, Sullivan was performing a discretionary function and is entitled to qualified immunity. White v. Birchfield, 582 So.2d 1085, 1087
(Ala. 1991), citing Davis v. Little, 362 So.2d 642, 643
(Miss. 1978). Even looking beyond Sullivan's immunity, we think it clear that her actions did not constitute negligence. It is also apparent that Sullivan's actions did not wrongfully intrude into Byrd's private activities and therefore did not constitute the tort of invasion of privacy. The summary judgment in favor of Sullivan was proper on these claims.
The summary judgment in favor of Sullivan was also appropriate on Byrd's § 1983 claim. School officials are entitled to qualified immunity from § 1983 liability for good faith, nonmalicious actions taken to fulfill their official duties. Wood v. Strickland, 420 U.S. 308, 318, 95 S.Ct. 992,999, 43 L.Ed.2d 214 (1975). No evidence was produced to show that Sullivan acted in bad faith or in a malicious manner in her handling of the incident in question; further, Sullivan did not deprive Byrd of any of her rights under the Federal Constitution.
The trial court also correctly dismissed Byrd's implied contract claims against the Board and correctly entered the summary judgment in favor of the Board on her § 1983 claim. Assuming, without deciding, that the Board had the contractual obligations alleged by Byrd, she failed to prove that the Board breached them or damaged her in any manner. As previously stated, a discretionary decision was made by Sullivan that Byrd's injury was not an emergency situation, and the correctness of that decision is supported by the record. As for her § 1983 claim, Byrd did not demonstrate that the Board acted maliciously or in bad faith, nor was she deprived of any Federal constitutional rights. Wood v. Strickland, supra.
The dismissal and summary judgment are affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON and COOK, JJ., concur.
[1] Knight was later suspended from school for three days for attacking Byrd. *Page 834