[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 100 
The plaintiffs appeal from a dismissal of their action as to certain defendants. The trial court made the dismissal final pursuant to Rule 54(b), A.R.Civ.P.
The student plaintiffs, by and through their parents and next friends[1] sued defendants William Paul McGee, a physical education teacher at Vaughn Road Elementary School. in Montgomery, Alabama;[2] Thomas Bobo (then superintendent of the Montgomery County Board of Education), individually and in his official capacity; Mary Bullard (at some times material hereto, principal of Vaughn Road Elementary School), individually and in her official capacity; Dorothy Moore (at some times material hereto, principal of Vaughn Road Elementary School), individually and in her official capacity; and other current and former members of the Montgomery County Board of Education, individually and in their official capacities,[3] alleging: (1) that McGee sexually abused each of the student plaintiffs and thereby caused humiliation, embarrassment, severe mental pain and anguish, and severe emotional distress that will continue into the future; (2) that McGee committed an assault and battery on each of the student plaintiffs; (3) that Bobo, Bullard, Moore, and the other Board members negligently or wantonly allowed McGee access to minor children, including the student plaintiffs, and negligently or wantonly supervised and monitored the activities of McGee; (4) that the acts of McGee, Bobo, Bullard, Moore, and the other Board members were carried out while they were acting under color of state law and that their "actions deprived each [student] plaintiff of her constitutional rights and privileges to be free from sexual abuse and molestation," citing 42 U.S.C. § 1983; and (5) that Bobo, Bullard, Moore, and the other Board members negligently or wantonly failed to comply with and negligently or wantonly neglected the student plaintiffs' rights as described under the Child Abuse Reporting Act, Ala. Code 1975, § 26-14-1 et seq., thereby causing the student plaintiffs serious mental and emotional damage.
Certain parents of those students ("the parent plaintiffs") sued also, in the same action, alleging that as a result of the alleged sexual abuse of their children, they had been *Page 101 
caused to suffer, and would continue to suffer, emotional distress.
All of the defendants, except McGee, moved to dismiss, arguing, among other things, that the complaint failed to state a claim upon which relief could be granted and arguing that the defendants were protected by the doctrine of qualified immunity. They argued that pursuant to that doctrine they can be held liable only for knowingly violating a "clearly established" constitutional right of the plaintiffs, but, they claimed, no such violation was alleged. The trial court granted the motion and dismissed the action as to all defendants except McGee. The plaintiffs appealed.
 State Law Claims
The original complaint in this case charged the defendants with negligent or wanton conduct — more specifically, it alleged that these defendants knew McGee had a propensity for sexual abuse, and that, in light of that knowledge, the defendants' retention and supervision of McGee was negligently and wantonly deficient.
County boards of education are not agencies of the counties, but are local agencies of the state, charged by the legislature with supervising public education within the counties. As such, they execute a state function, not a county function, and therefore, they partake of the state's immunity from lawsuits to the extent that the legislature authorizes. Hutt v. EtowahCounty Board of Education, 454 So.2d 973, 974 (Ala. 1984); Hillv. Allen, 495 So.2d 32 (Ala. 1986); Ala. Code 1975, §§ 16-8-8, -9; Clark v. Jefferson County Board of Education, 410 So.2d 23
(Ala. 1982); Sims v. Etowah County Board of Education,337 So.2d 1310 (Ala. 1976); Enterprise City Board of Education,348 So.2d 782 (Ala. 1977).
Actions against employees of boards of education are also generally barred. See Hill v. Allen, supra; Gill v. Sewell,356 So.2d 1196 (Ala. 1978); Deal v. Tannehill Furnace FoundryCommission, 443 So.2d 1213 (Ala. 1983).
In the Hill case, the defendants were members of a school board, a special education coordinator, a superintendent of the board, and a principal of the school. The complaint alleged that they "knew, or should have known" of physical, mental, and sexual abuse of mentally retarded students. Like the complaint in Hill, the complaint in this case charges the defendants with negligent or wanton conduct. The gist of the charges against the defendants is that they knew of McGee's propensities and had received complaints about his actions, but had taken no action to stop the abuse perpetrated by McGee and to protect these plaintiffs from his acts — but the complaint does not allege any fraud or bad faith on their part. Cf. Donahoo v.State, 479 So.2d 1188 (Ala. 1985); Unzicker v. State,346 So.2d 931 (Ala. 1977). Whatever that action might have been, it related to the performance of the defendants' statutory duties, which were discretionary functions for which they possessed constitutional immunity. Hill v. Allen, supra.
As to defendants Bobo, Moore, Bullard, and the other Board members, the trial court properly dismissed the plaintiffs' claims alleging negligent or wanton conduct. That dismissal was proper under the doctrine of discretionary immunity.
The plaintiffs also allege that the defendants negligently or wantonly failed to comply with, and neglected the plaintiffs' rights under, the Child Abuse Reporting Act, Ala. Code 1975, § 26-14-1 et seq.
Section 26-14-2 states the legislative purpose for enacting § 26-14-1 et seq.:
 "In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities. It is the intent of the legislature that, as a result of such efforts, and through the cooperation of state, county, local agencies and divisions of government, protective services shall be made available in an effort to prevent further abuses and neglect, to safeguard and enforce the general welfare of such children, and to encourage cooperation among the states in dealing with the problems of child abuse." *Page 102 
Section 26-14-3 directs that certain persons, called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect, shall make an oral report, followed by a written report, to a duly constituted authority, who then informs the Department of Human Resources so that the Department can provide protective services when deemed appropriate:
 "(a) All . . . school teachers and officials . . . called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority [as defined in § 26-14-1].
 "(b) When an initial report is made to a law enforcement official, the official subsequently shall inform the Department of Human Resources of the report so that the department can carry out its responsibility to provide protective services when deemed appropriate to the respective child or children."
Our review of § 26-14-1 et seq. persuades us that the legislature did not intend to confer a private right of action for any breach of the duty to report imposed by the statute. Rather, our review reveals that the primary thrust of the legislation is to help those who are abused or neglected by establishing child protection services and a method of conducting investigations. While the Act imposes a duty on an individual to make such a report, there is no indication of any legislative intent to impose civil liability for failure to report. Rather, the failure to report is made a misdemeanor and is made punishable by a sentence of not more than six months' imprisonment or a fine of not more than $500. § 26-14-13. Other provisions dealing with such reports provide civil and criminal immunity to those who make a report and they abrogate the rule of privileged communication, with the exception of the attorney-client privilege, as "a ground for excluding any evidence regarding a child's injuries or the cause thereof in any judicial proceeding resulting from a report pursuant to this chapter." § 26-14-10.
The Child Abuse Reporting Act creates a duty owed to the general public, not to specific individuals, and, consequently, it does not create a private cause of action in favor of individuals. Therefore, to the extent that the plaintiffs rely on that statute, they fail to state a cause of action, and the trial court properly dismissed the claims insofar as they were based on the statute. See, e.g., Borne v. Northwest AllenCounty School Corp., 532 N.E.2d 1196 (Ind.App. 1989); Fischerv. Metcalfe, 543 So.2d 785 (Fla. 1989); Thelma D. v. Board ofEducation, 669 F. Supp. 947 (E.D.Mo. 1987); Doe A. v. SpecialSchool District of St. Louis County, 637 F. Supp. 1138
(E.D.Mo. 1986).
 § 1983 Claims
To state a claim under § 1983, the plaintiff must allege facts constituting a deprivation of a constitutional right, under color of state law. 42 U.S.C. § 1983. The student plaintiffs assert § 1983 claims based on the deprivation of their "constitutional rights and privileges to be free from sexual abuse and molestation."
The United States Court of Appeals for the Fifth Circuit, inDoe v. Taylor Independent School District, 15 F.3d 443, 450-52
(5th Cir. 1994), cert. denied, Lankford v. Doe, ___ U.S. ___,115 S.Ct. 70, 130 L.Ed.2d 25 (1994) (a case in which a student, molested by a high school teacher, sued the principal of her school and the superintendent of the school district in their supervisory capacities for "permitting violations of her substantive due process right to bodily integrity"), stated the law applicable in a § 1983 case:
 " 'Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.' Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 443 (1979). To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs 'must show that they have asserted a recognized "liberty or property" interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly *Page 103 
deprived of that interest, even temporarily, under color of state law.' Griffith v. Johnston, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). 'The Supreme Court has expanded the definition of "liberty" beyond the core textual meaning of that term to include [not only] the . . . privileges [expressly] enumerated by the Bill of Rights, [but also] the "fundamental rights implicit in the concept of ordered liberty" and "deeply rooted in this Nation's history and tradition" under the Due Process Clause.' Id.; see also Bowers v. Hardwick, 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140, 146 (1986); Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675, 684-85 (1983); Moore v. City of East Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531, 539-40 (1977).
 "The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive a person of life, liberty or property without due process of law.' The Supreme Court has noted: 'Although a literal reading of the Clause might suggest that it governs only the procedures by which a State may deprive persons of liberty, for at least 105 years, at least since Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205
[1887], the Clause has been understood to contain a substantive component as well. . . .' Planned Parenthood v. Casey, ___ U.S. ___, ___, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674, 695 (1992) (citation omitted). This substantive component of the Due Process Clause 'protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them." ' Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068. 117 L.Ed.2d 261, 273
(1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668
(1986)).
 "Jane Doe's substantive due process claim is grounded upon the premise that school children have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and upon the premise that physical sexual abuse by a school employee violates that right. This circuit held as early as 1981 that '[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process.' Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981). Shillingford
involved a § 1983 action brought by a tourist against a New Orleans police officer. Shillingford was attending Mardi Gras festivities in New Orleans when he attempted to take a photograph of the officer making an arrest. The officer was annoyed and struck Shillingford with his nightstick, inflicting some physical injury. We found such action sufficient 'to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.' Id. at 266.
 "We cited Shillingford for this principle of law in Jefferson v. Ysleta Independent School District, 817 F.2d 303, 305 (5th Cir. 1987), a case involving a violation of a schoolchild's substantive due process rights by a teacher. The teacher in Jefferson lashed a second grade student to a chair for the better part of two school days. Again, we found that such actions by the teacher violated the student's substantive due process ' "right to be free of state-occasioned damage to [her] bodily integrity." ' Id. (quoting Shillingford, 634 F.2d at 265). We have also held that the infliction of 'corporal punishment in public schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." ' Fee v. Herndon, 900 F.2d 804, 808 (5th Cir.) (quoting Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1246 (5th Cir. 1984)), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990).
 "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical abuse . . . by a public schoolteacher. [The teacher's] sexual abuse of Jane Doe . . . is not contested by the defendants. Thus, Jane Doe clearly was deprived of a liberty interest recognized *Page 104 
under the substantive due process component of the Fourteenth Amendment. [Footnote omitted.] It is uncontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment. Obviously, there is never any justification for sexually molesting a schoolchild, and thus, no state interest, analogous to the punitive and disciplinary objectives attendant to corporal punishment, which might support it."
(Emphasis added.) See Stoneking v. Bradford Area SchoolDistrict, 882 F.2d 720 (3d Cir. 1989), cert. denied, Smith v.Stoneking, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) (a case in which a former student brought a § 1983 claim against the school district, the principal of the high school, the assistant principal of the high school, and the superintendent of the school district for injuries arising out of the teacher's alleged sexual assault on the former student.)
This case is similar to Doe in that the defendants in this case do not contest McGee's sexual abuse of the student plaintiffs. Thus, we conclude that the student plaintiffs were clearly deprived of a constitutional right for which they are entitled to bring a § 1983 claim. The trial court erroneously dismissed the student plaintiifs' § 1983 claim, based on what appears to be its erroneous interpretation that that count was based on "a respondeat superior argument."
Whether the student plaintiffs will ultimately prevail on the merits of their § 1983 claim against these defendants is not before us on this appeal of the dismissal:
 "On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala.R.Civ.P.], is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."
Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). (Citations omitted.)
We note, however, that in order to determine the personal liability of the defendants for McGee's sexual abuse of the student plaintiffs, the student plaintiffs must establish that the defendants, by action or inaction, demonstrated deliberate indifference toward the student plaintiffs' constitutional rights and thereby proximately caused the violation of those rights. See D.A.C. v. Thrasher, 655 So.2d 959 (Ala. 1995);Dothard v. Alabama State Department of Human Resources,613 So.2d 353 (Ala. 1993); Doe v. Taylor Independent SchoolDistrict, supra; Stoneking v. Bradford Area School District, supra; see also City of Canton v. Harris, 489 U.S. 378, 381,388, 109 S.Ct. 1197, 1200-01, 1204, 103 L.Ed.2d 412, 421-22
(1989), a case in which the United States Supreme Court held that a municipality's violation of the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment depended on a showing of a deliberate indifferent policy of training its employees that was the closely related cause of the violation of the plaintiff's federally protected right, explaining that "[t]o adopt lesser standards of fault and causation" would result in de facto respondeat superior liability." Id.,489 U.S. at 392, 109 S.Ct. at 1206, 103 L.Ed.2d at 428.
Although it is somewhat difficult to determine whether the parent plaintiffs also brought § 1983 claims against the defendants, in the event that they did we will address that issue.
We recognize that the Constitution affords some protection for family integrity and protects certain basic aspects of the family relationship against unjustified interference by the state. See Doe A v. Special School District of St. LouisCounty, supra, citing Stanley v. Illinois, 405 U.S. 645,92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (parents' rights to care, custody, and companionship), and Pierce v. Society of theSisters of the Holy Names, 268 U.S. 510, 45 S.Ct. 571, *Page 105 69 L.Ed. 1070 (1925) (parents' rights to direct the upbringing and education of their children without the Government's interfering with those rights by requiring all children to attend public schools). However, in this case we conclude that the parent plaintiffs have not stated a claim upon which they can recover under § 1983. Thus, any § 1983 claims brought by the parent plaintiffs were properly dismissed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, SHORES, KENNEDY, INGRAM and BUTTS, JJ., concur.
[1] One of the plaintiffs was a minor and a student at the time of the incident that is the subject of this appeal. She is now over 19 years of age. However, in this opinion, we will include her in the student plaintiffs.
[2] McGee pleaded guilty to one count of sexual abuse in the 1st degree, three counts of sexual abuse in the 2d degree, and two counts of attempted sexual abuse. He was sentenced to 10 years in the custody of the Department of Corrections, split to serve 3 years; he was sentenced to complete the sexual offender treatment offered at Bullock County Correctional Facility; he was sentenced to a year in the Montgomery County Detention Facility; and he was to serve 3 years on probation at the end of the incarceration.
The remainder of the 10-year sentence was suspended.
[3] The other persons who were sued individually and in their official capacities as members of the Montgomery County Board of Education were Dr. Frank Jackson, Henry Spears, Dr. John Winston, Kyle Renfroe, Mac Johnson, Foster Goodwin, Nellie Weil, Sandy Barnett, Michael Dickey, Herman Harris, H.W. Brendle, Debra Smith, Margaret Carpenter, B.A. "Tony" Edwards, and John A. Eberhart.
In their brief, the plaintiffs maintain that "they havenot sued the Montgomery County Board of Education as an entity for monetary damages."