Jerry Boyett (the student), a senior at Luverne High School, sued Lalar Tomberlin (the teacher), Jim Head (the principal), Sammy Carr (the superintendent), and the county board of education (the board), after he was disciplined for leaving class, without permission, to go to the restroom.
The student sought compensatory and punitive damages for state law tort claims involving "pain and suffering, embarrassment, humiliation, and invasion of privacy," as well as injunctive relief, or, in the alternative, a writ of mandamus to set aside the disciplinary action and to expunge any record of it from his permanent school record. He also alleged a violation of his rights under the *Page 126 Fourteenth Amendment to the United States Constitution and requested relief pursuant to 42 U.S.C. § 1983. The trial court entered summary judgments in favor of all defendants, and the student appealed. The Alabama Supreme Court transferred the cause to this court pursuant to Ala. Code 1975, § 12-2-7(6).
The student alleged that on September 13, 1993, while he was enrolled in the teacher's class at Luverne High School, he was suffering from diarrhea; that at the beginning of class, he asked the teacher for permission to go to the restroom; that the teacher refused to give him permission; that five minutes later he renewed his request; and that upon receiving a second denial of his request, he left the classroom, without permission, and went to the restroom. The principal imposed a disciplinary sanction of 10 days' detention, which meant that the student was required to read or study each day for 10 days while other students had a 15-minute recess.
The teacher filed the following affidavit:
 "On September 13, 1993, in my 7th period class [the student] stood up and announced in a loud voice, almost immediately after the bell rang to begin class, that (quoting to the best of my recollection): 'I have got to go to the bathroom and this tea has got to come out.' He said nothing about diarrhea. The first time I heard anything about diarrhea was when I read the complaint against me, which was filed on November 16, 1993.
 "When [the student] did this, the facts I had before me were as follows:
 "1. [The student] had been in my 6th period class immediately prior to this, where he exhibited no signs of discomfort.
 "2. During my 6th period class, [the student] . . . did not request to go to the bathroom. He could have gone to the bathroom without any affect on his grades, because he was not getting a grade for this 6th period class. Instead of acting sick, he acted, in my opinion, in a disruptive manner and in an attempt to get attention. Towards the end of class, he popped a rubberband on some kind of notebook, making a sound . . . like a firecracker. All of the students stopped and looked at him. He said 'Why are y'all looking at me?'
 "3. [The student] walked right by the bathroom when changing from my 6th period class to my 7th period class.
 "4. [The student] arrived in my 7th period class with approximately 3 minutes to spare. He spent this time chatting with another student, whom I understand to be his girlfriend.
 "5. [The student] was disruptive and disrespectful at the time he asked to leave the classroom. He was a disruptive student in my classroom at Luverne High School during his senior year.
 "6. [The student] was interrupting my classroom when he stood up in class and made his announcement. Students in my classroom know that they can quietly approach me with a request to go to the bathroom and then leave the classroom. [The student's] loud interruption was not in keeping with this policy.
 "I made a decision based on the above facts not to honor [the student's] request to go to the bathroom. Given the theatrical nature of his request, I felt that allowing such request would affect my ability to educate my students and control my classroom."
In Byrd v. Sullivan, 657 So.2d 830 (Ala. 1995), a recent case involving a student's claims against a school principal and a county board of education alleging negligence and invasion of privacy, our Supreme Court reiterated the following long-standing principles:
 "Article I, § 14, Ala. Const. (1901), provides that the State of Alabama shall not be made a defendant 'in any court of law or equity'; this is the constitutional basis for the doctrine of sovereign immunity. County boards of education, as local agencies of the State, partake of this immunity. Hutt v. Etowah County Bd. of Educ., 454 So.2d 973, 974 (Ala. 1984). An individual who, while acting as a State agent, engages in the exercise of a discretionary function may also be entitled to qualified immunity. Nance v. Matthews, 622 So.2d 297 (Ala. 1993); see also Faulkner v. Patterson, 650 So.2d 873 (Ala. 1994). 'Discretionary acts' have been defined as *Page 127 
'[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take . . . [;] [those requiring] exercise in judgment and choice and [involving] what is just and proper under the circumstances.'
 Black's Law Dictionary 467 (6th ed. 1990); see also Smith v. Arnold, 564 So.2d 873, 876 (Ala. 1990); Nance v. Matthews, supra."
Byrd v. Sullivan, 657 So.2d at 832-33 (brackets added by the court in Byrd). See also Bonwell v. Bobo, 659 So.2d 98, 101
(Ala. 1995).
The student argues that the teacher was not engaged in the exercise of a discretionary function because, he claims, a teacher has no discretion to refuse a student's request to go to the restroom. He maintains that "[w]hen the child needs to use the bathroom, there is no conceivable justification in denying him that need."
Of course, that argument begs the question, which, for the classroom teacher, is: does the student genuinely need to use the restroom, or is he seeking to get out of class for another reason? A teacher's resolution of that question necessarily involves an exercise in judgment and choice. It is the epitome of a discretionary function. The student's medical expert recognized as much on cross-examination:
 "Q. My question is: A teacher has to make a discretionary call in a situation like what happened at Luverne High School on September 13, 1993, that is, to decide whether to interrupt the class, allow a student to leave or not allow a student to leave. Is that a fair statement?
"A. That's a fair statement."
In Byrd v. Sullivan, our Supreme Court observed:
 "[T]hese are the types of decisions made by teachers, principals, and other school personnel every day, using their best judgment and evaluation of the circumstances."
657 So.2d at 833. The teacher was entitled to immunity when she exercised her discretionary authority to refuse the student's request to leave the classroom. Likewise, when the principal determined what discipline should be imposed on the student for leaving the classroom without permission, and the superintendent upheld that disciplinary sanction, those administrators were also exercising discretionary functions, for which they have immunity. As to the state law claims, the summary judgments were proper under the doctrine of discretionary immunity.
"To state a claim under § 1983, the plaintiff must allege facts constituting a deprivation of a constitutional right, under color of state law." Bonwell v. Bobo, 659 So.2d at 102. Furthermore, in order to recover against a teacher or a school administrator under § 1983, a student must establish not only that he or she was deprived of a constitutional right, but also that the person who deprived him or her of that right did so in bad faith or with deliberate indifference to his or her rights.Id. Relying on Bonwell, the student claims that he was denied "a liberty interest in his bodily integrity," as well as a constitutional right to "privacy and freedom from humiliation and embarrassment."
In Bonwell, the Alabama Supreme Court held that students who had been sexually molested by a teacher had a § 1983 claim for violation of their substantive due process rights to bodily integrity. The facts of this case are a far cry from those inBonwell. The Due Process Clause of the Fourteenth Amendment simply does not guarantee a student the right to be excused from a classroom upon demand, even if the asserted reason is to use the toilet. In this case, the student neither showed the deprivation of a constitutional right nor established bad faith or deliberate indifference on the part of the teacher and the administrators. The trial court properly entered the summary judgment as to the student's § 1983 claim.
The student's claim for injunctive relief or for a writ of mandamus to expunge any record of this disciplinary proceeding from school records was also correctly denied. The principal's affidavit states that the disciplinary action against the student is not now and never was mentioned in the student's permanent record. The evidence in this case *Page 128 
indicates that the disciplinary form was destroyed at the end of the student's senior year. The student does not dispute that evidence. Accordingly, there was no basis for injunctive relief
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur.