[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 395 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 396 
The Alabama Department of Youth Services ("DYS") and J. Walter Wood, Jr., petition this Court for a writ of mandamus directing Judge Tracy S. McCooey to grant their Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss the claims against them. We grant the petition in part and deny the petition in part.
Jane Doe 1 and Jane Doe 2, by and through their respective next friends ("Doe plaintiffs"), sued DYS employees Jimmie Jenkins, John Zeigler, and Kenneth Green for committing various sexual assaults on the Doe plaintiffs and for sexually harassing them while the Doe plaintiffs were in the custody of DYS at its Chalkville campus. Jenkins, Zeigler, and Green are not parties to this petition.
The Doe plaintiffs sued DYS for violating Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended,20 U.S.C. § 1681 et seq., by failing "to respond and/or their inadequate response to" a "sexually hostile education environment and sexual abuse and harassment." Against DYS, the Doe plaintiffs seek injunctive relief, compensatory and punitive damages, and attorneys' fees.
The Doe plaintiffs sued executive director of DYS J. Walter Wood, Jr.,[1] under various legal theories. All were based on Wood's, and certain other supervisory defendants', being "entrusted with the security of elementary students like the minor plaintiffs who are placed by operation of law into their charge." *Page 397 
The Doe plaintiffs alleged a claim against Wood under42 U.S.C. § 1983 for deliberate indifference to their "right[s] to personal safety, security and privacy, guaranteed by theFourteenth Amendment" while Wood was "acting under color of state law." The Doe plaintiffs alleged that Wood "failed to develop, implement or administer procedures or policies reasonably designed to provide protection for the minor Plaintiffs from sexual harassment and abuse"; failed "to prevent male employees of DYS from sexually abusing and harassing them"; failed "to investigate prior complaints" against Green, Jenkins, and Zeigler; and failed "to protect the Plaintiffs from harm and from further harm after [Wood] received notice of the sexual harassment and abuse and the potential for sexual harassment of" them. The Doe plaintiffs seek compensatory and punitive damages, "equitable relief," attorneys' fees, and costs. The prayer for relief does not specifically seek an injunction.
The Doe plaintiffs also alleged state-law claims against Wood, in his individual and official capacities, for "intentionally and recklessly caus[ing] them to suffer extreme emotional distress by [his] outrageous misconduct" and for negligently or wantonly hiring, supervising, investigating, and monitoring Green, Jenkins, Zeigler, and their supervisor, the principal of the school. The Doe plaintiffs alleged that Wood's acts or omissions in the torts alleged in these two claims were "malicious and intended to injure." The Doe plaintiffs also claimed against Wood in his individual and official capacities for "willfully, recklessly, and/or mistakenly represent[ing] to Plaintiffs a material existing fact, which the Plaintiffs relied on said false representation that caused damage to the Plaintiff[s] as a proximate result." The Doe plaintiffs asked for compensatory and punitive damages and costs for all of these claims.
DYS and Wood moved to dismiss the Doe plaintiffs' claims against them. DYS asserted that the claims against it should be dismissed on the ground that DYS is an agency of the State of Alabama entitled to sovereign immunity under theEleventh Amendment to the United States Constitution and Art. I, § 14, Alabama Constitution of 1901. Wood asserted that he is entitled to a dismissal of the claims against him in his official capacity on the ground of sovereign immunity under Art. I, § 14, Alabama Constitution of 1901, and that he is entitled to a dismissal of the claims against him in his individual capacity on the grounds of federal qualified immunity and state-agent immunity. Both DYS and Wood asserted that they are entitled to dismissal of the federal § 1983 claims against them on the ground that § 1983 precludes respondeat superior liability. The Doe plaintiffs responded in opposition to the motion to dismiss. After a hearing, the trial court denied the motion to dismiss filed by DYS and Wood.
Inasmuch as the issue before us is whether the trial court correctly denied a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss, "[t]his Court must accept the allegations of the complaint as true." Creola Land Dev., Inc. v. BentbrookeHousing, L.L.C., 828 So.2d 285, 288 (Ala. 2002). Moreover, as the defendants sought only a Rule 12(b)(6) dismissal without resort to facts supplied by affidavit or other evidentiary material outside the allegations of the complaint, and as the trial court accordingly treated the motion only as what it was, a motion to dismiss and not a motion for summary judgment with evidentiary materials outside the allegations of the complaint, those allegations themselves are the only potential source of factual support for the defendants' claims of immunity. Rule 12(b), Ala. R. Civ. P.; Mooneyham v. State *Page 398 Bd. of Chiropractic Examiners, 802 So.2d 200 (Ala. 2001);Garris v. Federal Land Bank of Jackson, 584 So.2d 791 (Ala. 1991); Hales v. First Nat'l Bank of Mobile, 380 So.2d 797 (Ala. 1980).
 "`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499
(Ala. 1995). . . . Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala. 1995)."
Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala. 1998).
 "The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."
Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993) (citations omitted). Accord Cook v. Lloyd Noland Found., Inc.,825 So.2d 83, 89 (Ala. 2001), and C.B. v. Bobo, 659 So.2d 98, 104 (Ala. 1995). "We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff." Ex parte Haralson,853 So.2d 928, 931 (Ala. 2003). "[A] motion to dismiss is typically not the appropriate vehicle by which to assert [federal] qualified immunity or State-agent immunity and . . . normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery." Ex parte Alabama Dep't of Mental Health MentalRetardation, 837 So.2d 808, 813-14 (Ala. 2002).
 Eleventh Amendment Immunity
DYS contends that, because it is an agency of the State of Alabama, it is entitled to Eleventh Amendment immunity and to the dismissal of all claims against it. The complaint shows, and the Doe plaintiffs concede, that the only claim against DYS is a Title IX, 20 U.S.C. § 1681 et seq., claim.
Title IX provides, in pertinent part: "No person . . . shall, on the basis of sex, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).
42 U.S.C. § 2000d-7(a), provides:
 "(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 et seq.]. . . .
 "(2) In a suit against a State for violation of a statute referred to in paragraph (1), remedies (including remedies both at law and equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State."
Eleventh Amendment immunity from a Title IX claim is governed by federal substantive law. Powers v. CSX Transp., Inc.,105 F.Supp.2d 1295, 1299 n. 2 (S.D.Ala. 2000), and Alabama StateDocks *Page 399 Terminal Ry. v. Lyles, 797 So.2d 432 (Ala. 2001). DYS is a state agency entitled to the same Eleventh Amendment immunity available to the State of Alabama. See Jones v. Phyfer,761 F.2d 642 (11th Cir. 1985).
The Eleventh Amendment to the United States Constitution provides:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."
Decisions of the United States Supreme Court have extended the applicability of the Eleventh Amendment to suits by citizens against their own respective states. Board of Trustees of Univ.of Alabama v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955,148 L.Ed.2d 866 (2001).
The Supreme Court has "repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause[, Article I, § 8, cl. 1]." Davis v. MonroeCounty Bd. of Educ., 526 U.S. 629, 640, 119 S.Ct. 1661,143 L.Ed.2d 839 (1999). In Alden v. Maine, 527 U.S. 706, 741,119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), the United States Supreme Court addressed "[w]hether Congress has authority under Article I to abrogate a State's immunity from suit in its own courts," which it noted was "a question of first impression." The Supreme Court held that
 "[a]s it is settled doctrine that neither substantive federal law nor attempted congressional abrogation under Article I bars a State from raising a constitutional defense of sovereign immunity in federal court, . . . our decisions suggesting that the States retain an analogous constitutional immunity from private suits in their own courts support the conclusion that Congress lacks the Article I power to subject the States to private suits in those fora."
Alden, 527 U.S. at 748, 119 S.Ct. 2240. However, in Garrett,supra, addressing whether the Eleventh Amendment immunizes states against suits pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 through § 12117, the Supreme Court explains:
 "Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States. See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. See Kimel, supra, at 73, 120 S.Ct. 631.
 "We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and `act[s] pursuant to a valid grant of constitutional authority.' 528 U.S., at 73, 120 S.Ct. 631. . . .
 "Congress may not, of course, base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I. See Kimel, supra, at 79, 120 S.Ct. 631. (`Under our firmly established precedent then, if the [Age Discrimination in Employment Act *Page 400 
of 1967] rests solely on Congress' Article I commerce power, the private petitioners in today's cases cannot maintain their suits against their state employers'); Seminole Tribe, supra, at 72-73, 116 S.Ct. 1114, (`The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction'); College Savings Bank, supra, at 672, 119 S.Ct. 2219," Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank, 527 U.S. 627, 636, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); Alden v. Maine, 527 U.S. 706, 730-733, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). In Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), however, we held that `the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment.' Id., at 456, 96 S.Ct. 2666 (citation omitted). As a result, we concluded, Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power. See ibid. Our cases have adhered to this proposition. See, e.g., Kimel, supra, at 80, 120 S.Ct. 631. Accordingly, the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation.
"Section 1 of the Fourteenth Amendment provides, in relevant part:
 "`No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'
 "Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting `appropriate legislation.' See City of Boerne v. Flores, 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624
(1997). Congress is not limited to mere legislative repetition of this Court's constitutional jurisprudence. `Rather, Congress' power "to enforce" the Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text.' Kimel, supra, at 81, 120 S.Ct. 631; City of Boerne, supra, at 536, 117 S.Ct. 2157.
 "City of Boerne also confirmed, however, the long-settled principle that it is the responsibility of this Court, not Congress, to define the substance of constitutional guarantees. 521 U.S., at 519-24, 117 S.Ct. 2157. . . ."
531 U.S. at 363-65, 121 S.Ct. 955 (footnote omitted; emphasis added).
The Garrett Court ultimately held that § 5 of theFourteenth Amendment did not authorize Congress to enact Title I of the Americans with Disabilities Act insofar as that legislation would purport to authorize a state employee to sue the state for money damages for failing or refusing to accommodate that employee's disabilities for the purposes of the state employment. The bases for this conclusion were two-fold. The first basis was that the Congressional findings cited in support of this feature of the legislation "f[e]ll far short of even suggesting the pattern of unconstitutional discrimination on which § 5 legislation *Page 401 
must be based." Garrett, 531 U.S. at 370, 121 S.Ct. 955. The second basis was that the remedy of money damages in favor of a "private individual" state employee against the state to redress its failure or refusal to accommodate the employee's disabilities would not "be congruent and proportional to the targeted violation." Garrett, 531 U.S. at 374, 121 S.Ct. 955. Garrett
held, therefore, that Title I of the Americans with Disabilities Act did not abrogate the Eleventh Amendment immunity of the states against such suits. Garrett, 531 U.S. at 374 n. 9,121 S.Ct. 955.
The defects in or limitations on Title I of the Americans with Disabilities Act, however, are not common to the Title IX legislation now before us. Both the pattern of unconstitutional sexual discrimination targeted by Title IX and the appropriateness of the remedy of money damages for the sexual discrimination are well recognized. Davis, supra; Franklin v.Gwinnett County Public Schools, 503 U.S. 60, 112 S.Ct. 1028,117 L.Ed.2d 208 (1991); North Haven Bd. of Educ. v. Bell,456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982); Cannon v. Universityof Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Moreover, even Garrett recognizes that the Eleventh Amendment does not immunize the states against actions "by private individuals . . . for injunctive relief" from discrimination.Garrett, 531 U.S. at 374 n. 9, 121 S.Ct. 955.
The United States Supreme Court has expressly held that "[i]n the Rehabilitation Act Amendments of 1986, 100 Stat. 1845,42 U.S.C. § 2000d-7, Congress abrogated the States'Eleventh Amendment immunity under Title IX [of the Education Amendments of 1972, supra]. . . ." Franklin v. Gwinnett County PublicSchools, 503 U.S. at 72, 112 S.Ct. 1028. "`Title IX [addressing sex discrimination]' . . . `was patterned after Title VI of the Civil Rights Act of 1964 [addressing racial discrimination].'"Alexander v. Sandoval, 532 U.S. 275, 280, 121 S.Ct. 1511,149 L.Ed.2d 517 (2001) (quoting Cannon, 441 U.S. at 694,99 S.Ct. 1946). Thus, the United States Supreme Court has held that "[s]ection 1003 of the Rehabilitation Act Amendments of 1986,100 Stat. 1845, 42 U.S.C. § 2000d-7, expressly abrogated States'sovereign immunity against suits brought in federal court to enforce Title VI" of the Civil Rights Act of 1964 also.Alexander, 532 U.S. at 280, 121 S.Ct. 1511 (emphasis added).
While the United States Supreme Court, in Franklin, supra, expressly recognized that Title IX was enacted by Congress pursuant to its powers under Article I of the United States Constitution, the United States Supreme Court, in MississippiUniversity for Women v. Hogan, 458 U.S. 718, 732,102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982), also recognized that Title IX wasenacted by Congress pursuant to its Fourteenth Amendment, § 5,power. On this topic, the Franklin Court wrote:
 "Franklin argues that, in any event, Title IX should not be viewed solely as having been enacted under Congress' Spending Clause powers and that it also rests on powers derived from § 5 of the Fourteenth Amendment. See Brief for Petitioner 19, n. 10. Because we conclude that a money damages remedy is available under Title IX for an intentional violation irrespective of the constitutional source of Congress' power to enact the statute, we need not decide which power Congress utilized in enacting Title IX."
503 U.S. at 75 n. 8, 112 S.Ct. 1028.
While neither Franklin nor Alexander, supra, undertakes to reconcile their respective holdings that Title IX (sex discrimination) and Title VI (racial discrimination) abrogate theEleventh Amendment *Page 402 
immunity of the states with the other United States Supreme Court cases holding that federal legislation based (like Title IX and Title VI) on the Article I powers of Congress does not abrogate the Eleventh Amendment immunity of the states, e.g., Alden andGarrett, supra, Garrett does seem to reconcile the apparent conflict. Garrett explains that an exception has emerged to the general rule that Congress cannot "base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I," Garrett, 531 U.S. at 364-65, 121 S.Ct. 955. The exception is that legislation enacted by Congress not only pursuant to its Article I powers but also "pursuant to a valid exercise of its § 5[, Fourteenth Amendment,] power" may subject nonconsenting states to suit in federal court or state court for money damages as well as injunctive relief for violation of the federal legislation. Garrett, 531 U.S. at 364-65, and 374 n. 9,121 S.Ct. 955. See Kimel v. Florida Bd. of Regents,528 U.S. 62, 79, 80-82, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); SeminoleTribe of Florida v. Florida, 517 U.S. 44, 72-73, 116 S.Ct. 1114,134 L.Ed.2d 252 (1996); Fitzpatrick v. Bitzer, 427 U.S. 445,456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); Larkins v. Departmentof Mental Health Mental Retardation, 806 So.2d 358, 363 (Ala. 2001).
Therefore, because Congress enacted Title IX not only pursuant to its Article I powers, Davis and Franklin, supra, but also pursuant to its Fourteenth Amendment, § 5, power, Hogan, supra, Congress successfully abrogated the Eleventh Amendment immunity of the states from suits in federal and state courts for violations of Title IX. Garrett, 531 U.S. at 364-65,121 S.Ct. 955, and Franklin, 503 U.S. at 72, 112 S.Ct. 1028. SeeAlexander, 532 U.S. at 280, 121 S.Ct. 1511; Kimel,528 U.S. at 79, 80-82, 120 S.Ct. 631; Seminole Tribe, 517 U.S. at 72-73,116 S.Ct. 1114; Bitzer, 427 U.S. at 456, 96 S.Ct. 2666;Larkins, 806 So.2d at 363. Accordingly, DYS is not entitled toEleventh Amendment immunity from the Doe plaintiffs' Title IX claim.
 Federal Qualified Immunity
Wood argues that he is entitled to federal qualified immunity from the Doe plaintiffs' federal § 1983 claim against him.
 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."
Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,73 L.Ed.2d 396 (1982). "Qualified immunity is designed to allow government officials to avoid the expense and disruption of going to trial, and is not merely a defense to liability." Hardy v.Town of Hayneville, 50 F.Supp.2d 1176, 1189 (M.D.Ala. 1999). "An official is entitled to qualified immunity if he is performing discretionary functions and his actions do `"not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" Hardy,50 F.Supp.2d at 1189 (quoting Lancaster v. Monroe County, 116 F.3d 1419, 1424
(11th Cir. 1997)).
 "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss. See Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). The motion to dismiss will be granted if the `complaint fails to allege the violation of a clearly established constitutional right.' Id. (citing Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997)). Whether the *Page 403 complaint alleges such a violation is a question of law that we review de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. Id."
St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (emphasis added).
 "`Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so.
The deprivations that constitute widespread abuse sufficient to notice the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.'"
Braddy v. Florida Dep't of Labor Employment Sec.,133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford,906 F.2d 667, 671 (11th Cir. 1990) (citations omitted and emphasis added)). Accord George v. McIntosh-Wilson, 582 So.2d 1058,1062-63 (Ala. 1991).
In C.B. v. Bobo, supra, this Court stated, in pertinent part:
 "`If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical abuse . . . by a public schoolteacher.
[The teacher's] sexual abuse of Jane Doe . . . is not contested by the defendants. Thus, Jane Doe clearly was deprived of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment. [Footnote omitted.] It is uncontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment. Obviously, there is never any justification for sexually molesting a schoolchild, and thus, no state interest, analogous to the punitive and disciplinary objectives attendant to corporal punishment, which might support it.'
"(Emphasis added [in C.B.].)"
659 So.2d at 103-04 (quoting Doe v. Taylor Indep. Sch. Dist.,15 F.3d 443, 450-52 (5th Cir. 1994)).
The Doe plaintiffs' complaint alleges Wood's violation of their clearly established constitutional right to "bodily integrity" pursuant to the Fourteenth Amendment to the United States Constitution, see C.B. v. Bobo, 659 So.2d at 104. The Doe plaintiffs' complaint further alleges that Wood failed "to protect the plaintiffs from harm and from further harm after hereceived notice of the sexual harassment and abuse and the potential for sexual harassment" (emphasis added) committed by DYS employees against the plaintiffs. Therefore, Wood has not shown a clear legal right to a dismissal of the Doe plaintiffs' § 1983 claim on the ground of federal qualified immunity.
 Section 14 Sovereign Immunity
DYS asserts that Art. I, § 14, Alabama Constitution of 1901, sovereign immunity entitles DYS to a dismissal of the federal Title IX claim. Article I, § 14, provides: "That the State of Alabama shall never be made a defendant in any court of law or equity." "Under this provision, the state and its agencies have absolute immunity *Page 404 
from suit in any court." Alabama State Docks v. Saxon,631 So.2d 943, 945-46 (Ala. 1994).
 "[DYS] appears to assume that its state law sovereign immunity directly bars the plaintiff[s'] federal claims brought against it. . . . It does not. Rather, the Eleventh Amendment alone prescribes the parameters of the state's sovereign immunity from such a claim in federal fora. State law sovereign immunity is relevant only as it indicates whether the state considers the entity to be part of the state. It is at best only a rough, overly inclusive gauge of arm-of-the-state status under the Eleventh Amendment, as the Alabama Constitution provides sovereign immunity to entities that do not possess Eleventh Amendment immunity. Compare, e.g., Carroll v. Hammett, 744 So.2d 906, 910 (Ala. 1999) (county boards of education are protected by state law sovereign immunity) with Stewart v. Baldwin County Board of Education, 908 F.2d 1499, 1501 (11th Cir. 1990) (Alabama county board of education has no immunity under the Eleventh Amendment)."
Powers, 105 F.Supp.2d at 1299 n. 2. The law ofEleventh Amendment immunity, not of state constitutional sovereign immunity, governs a Title IX claim brought against a state. Id.
Therefore, DYS is not entitled to a dismissal of the Doe plaintiffs' Title IX claim on the ground of Art. I, § 14, sovereign immunity.
Wood argues that he is entitled to sovereign immunity from the state-law claims against him in his official capacity. "State officers and employees, in their official capacities and individually, also are absolutely immune when the action is, in effect, one against the state." Saxon, 631 So.2d at 946.
 "The State cannot be sued indirectly by suing an officer in his or her official capacity when a judgment against the officer would directly affect the financial status of the State treasury. . . .
 "This constitutionally guaranteed principle of State immunity acts as a jurisdictional bar to an action against the State by precluding a court from exercising subject-matter jurisdiction. Therefore, if Lyons is protected by State immunity, we must dismiss the action against him for lack of subject-matter jurisdiction."
Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala. 2003) (citations omitted). "[A]n indirect action against the State by suing a State official . . . impermissibly seeks funds from the State treasury." Id. Consequently, Wood has shown a clear legal right to a dismissal of the Doe plaintiffs' state-law claims against him in his official capacity.
 State-agent Immunity
Wood argues that he is entitled to a dismissal of the Doe plaintiffs' state-law claims against him in his individual capacity on the ground of state-agent immunity because, he says, he "was clearly engaged in discretionary functions at the time of the alleged acts." Petition, p. 19. "Ex parte Cranman,792 So.2d 392 (Ala. 2000), recounts the evolution of State-agent immunity," Ex parte Rizk, 791 So.2d 911, 913 (Ala. 2000), and restates the law on that topic:
 "We therefore restate the rule governing State-agent immunity:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or *Page 405 
agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
 "(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
 "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
 "(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
 "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
 "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
 "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000). "This restatement was adopted by our decisions in Ex parte Rizk, [supra,] and Ex parte Butts, 775 So.2d 173 (Ala. 2000)." Exparte Blankenship, 806 So.2d 1186, 1189 (Ala. 2000).
The second paragraph of exceptions to state-agent immunity inCranman expressly denies state-agent immunity for conduct that is willful, malicious, or fraudulent. 792 So.2d at 405. Each one of the plaintiffs' state-law claims against Wood expressly alleges that his conduct was either malicious, willful, "intended to injure the minor plaintiffs," or fraudulent. Some of the state-law claims allege a combination of these exceptions. Therefore, the allegations do not show, and Wood has not shown, that he has a clear legal right to a dismissal of any of these state-law claims on the basis of state-agent immunity.
 Conclusion
Accordingly, we grant the petition only to the extent that we will issue our writ of mandamus directing the trial court to dismiss only the state-law claims against Wood in his official
capacity. We deny the petition insofar as it seeks a writ directing the dismissal of the federal Title IX claim against DYS, the federal § 1983 claim against Wood, and the state-law claims against Wood in his individual capacity. Our opinion in this case does not address any defense other than the petitioners' claims of immunity and does not foreclose a reassertion of the immunity claims by way of a motion for summary judgment after appropriate discovery.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
HOUSTON, BROWN, and STUART, JJ., concur.
LYONS, HARWOOD, and WOODALL, JJ., concur in the rationale in part and concur in the result.
[1] The Doe plaintiffs also sued other state officials who are not parties to this petition. *Page 406