Dusty Vernon Voyless Carroll, Jr., a minor, acting by and through his mother and next friend, Sheila Darlene Slaught,[1] filed a complaint against David Hammett and the Calhoun County Board of Education (the "Board"), alleging tort claims of negligent or wanton supervision and a claim under 42 U.S.C. § 1983. Hammett was sued individually and as assistant principal of Pleasant Valley High School. Carroll sought compensatory and punitive damages based on injuries he suffered, while a student at Pleasant Valley High School, as the result of being assaulted and severely battered by another student, Matt Stone. The trial court entered a summary judgment in favor of Hammett and the Board. Carroll appeals the summary judgment, but he challenges it only as it relates to the tort claims against Hammett.[2] The sole issue presented on appeal is whether Hammett is entitled to discretionary-function immunity as to the actions on which Carroll's tort claims against him are based. Because we hold that Hammett is entitled to discretionary-function immunity, we affirm the summary judgment in favor of Hammett on the tort claims.
 I.
Our standard for reviewing a summary judgment is well established. "In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c) Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Westv. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). In determining whether the nonmovant presented substantial evidence creating a genuine issue of material fact, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. See Hanners v. Balfour Guthrie,Inc., 564 So.2d 412, 413 (Ala. 1990).
 II.
The evidence in the record, viewed in a light most favorable to Carroll, indicates the following facts. At the time of the incident, Carroll was 15 years old and was a 9th-grade student at Pleasant Valley High School. Carroll testified by deposition that on January 16, 1996, during lunch, another student, Dustin McCreless, *Page 909 
told Carroll that Matt Stone has said he wanted to fight Carroll. Carroll replied by stating that he did not want to fight Stone. Approximately a week earlier, Stone had given Carroll a note in which Stone stated that he was going to "whip [Carroll's] ass" because, he said, Carroll had called Stone's girlfriend "a bitch." Carroll denies he made such a statement.
During his fifth-period class, which came after lunch, Carroll was told by another student, Justin Veasey, who was Stone's friend, that Carroll "need[ed] [his] butt whipped." Stone overheard Veasey's statement and said to Veasey, "Don't worry, I'm going to get him next period." Following this threat, Carroll asked the teacher for permission to go to the principal's office. Carroll went directly to Assistant Principal Hammett's office. Carroll told Hammett that Stone had threatened to beat him up and that he was "scared." Hammett called Matt Stone to his office. Stone admitted to Hammett that he had threatened Carroll. Hammett next called Veasey to his office. Veasey denied making the statement to Carroll. Hammett warned Stone and Veasey that he would not tolerate any fighting in school and that they would be punished if they did fight at school. Hammett also told the boys that he would telephone the sheriff's department if they carried out the threat. Stone asked Hammett what the punishment for fighting would be, and Hammett informed him that the punishment would be suspension for two days. After Hammett explained to the boys the punishment for fighting, Stone assured Hammett that he would not fight Carroll. Hammett then sent Stone and Veasey back to class. After sending Stone and Veasey back to class, Hammett called McCreless to his office. McCreless confirmed that during lunch Stone had made the statements that McCreless had earlier told Carroll about, and, for fear that Stone would attack him as well, asked Hammett not to disclose that he had reported those statements. Hammett then sent McCreless back to class. Carroll remained with Hammett. Hammett told Carroll not to worry and to tell him if anything else happened. Hammett testified by deposition that Carroll appeared comfortable with the resolution of the situation. Hammett then sent Carroll back to class. Because Hammett had been involved in a parent conference when Carroll came to him, he did not inform any teachers about the situation.
At the end of Carroll's sixth-period class, as he was walking to a patio break area in the school, Stone ambushed him from behind a door. Stone punched Carroll in the face, knocking him to the ground, and he repeatedly kicked Carroll about the face and head. Carroll suffered severe injuries as a result of Stone's assault and battery, including a broken nose, a cracked jaw, and a shattered nasal passage. After the attack, Stone was taken to Hammett's office. Hammett notified the sheriff's department, and Stone was suspended from school pending a Board hearing.
In January 1997, Carroll, acting through his mother, filed this action against Hammett and the Board, alleging negligence and wantonness and making a claim under 42 U.S.C. § 1983. Hammett and the Board moved jointly for a summary judgment on all claims. The court, in entering the summary judgment on all claims, ruled:
 "Well established case law mandates the entry of summary judgment for the defendants. Immunity, arising from the Alabama Constitution, discretionary function immunity, and federal qualified immunity prevent the claims advanced in the Complaint from being successfully prosecuted against the defendants.
 "Mr. Hammett was faced with a situation between two students which appeared, according to the plaintiff and Mr. Hammett, to have been successfully defused. Nevertheless, the other student virtually ambushed the minor plaintiff, severely injuring the plaintiff. The special concurring opinion in B.M. v. *Page 910 Crosby, [581 So.2d 842 (Ala. 1991),] appears applicable here:
 "`Presiding Judge Charles R. Crowder, in his order entering the summary judgment for the defendant teacher, Ms. Dorothy Crosby, wrote:
 "`"Shorn of their historic authority, often intimidated by unruly and violent elements, including their students, teachers in this state and country, in the opinion of this Court, are under siege. To hold them under the specter of lawsuits, as the result of unforeseen acts of violence or unforeseen accidents to students while under their care, would only unduly add to the evergrowing woes of many of the already harassed teachers of this country."'"
 "B.M. v. Crosby, 581 So.2d 842, [843] (Ala. 1991) (Houston, J., concurring specially)."
(Citations in first paragraph omitted.)
 III.
Carroll contends that the trial court erred in entering the summary judgment in favor of Hammett on the tort claims. Specifically, Carroll argues that Hammett is not entitled to discretionary-function immunity because, he argues, under Ala. Code 1975, § 16-1-24.1(b), Hammett was required to notify law-enforcement officials and to suspend Stone when he learned that Stone had threatened Carroll, and, thus, Carroll contends, Hammett was engaged in the performance of a ministerial function. Carroll also argues that Hammett is not entitled to discretionary-function immunity because he acted in bad faith and beyond his authority.[3]
We disagree with both arguments.
County boards of education are deemed to be local agencies of the State for purposes of applying the State's sovereign immunity under Art. I, § 14, of the Constitution of Alabama of 1901. See L.S.B. v. Howard,659 So.2d 43, 44 (Ala. 1995) (citing Hutt v. Etowah CountyBd. of Educ., 454 So.2d 973, 974 (Ala. 1984)). Thus, a person who acts as an agent of a county board of education shares in the State's sovereign immunity if the act complained of was committed while that person was performing a discretionary act. See id. (citing Nance v.Matthews, 622 So.2d 297 (Ala. 1993)). Discretionary-function immunity protects an employee of a county board of education employee from liability not only for negligent conduct but also for wanton conduct; however, it does not protect school officials sued in their individual capacities based on acts committed in bad faith, or school officials sued in their official capacities based on acts committed beyond their authority. See Nance, 622 So.2d at 302; Hill v. Allen,495 So.2d 32, 34 (Ala. 1986). "Whether a particular defendant is engaged in a discretionary function, and is thereby immune from liability, is a question of law to be decided by the trial court." Louvierev. Mobile County Bd. of Educ., 670 So.2d 873, 877 (Ala. 1995).
This Court has previously explained the distinction between discretionary functions and ministerial functions:
 "`"[M]inisterial acts" [are] those involving "[l]ess in the way of personal decision or judgment or [in which] the matter for which judgment is required has little bearing of importance upon the validity of the act". . . . "[M]inisterial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done." [Citing Restatement (Second) of Torts, § 895D, cmt. f (1979).] Conversely, "discretionary acts" are defined as follows by Black's *Page 911 Law Dictionary 419 (5th ed. 1979): "Those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion. . . . One which requires exercise in judgment and choice and involves what is just and proper under the circumstances."'"
Nance, 622 So.2d at 300 (quoting Smith v. Arnold, 564 So.2d 873,876 (Ala. 1990) (alterations and omissions in original).
 A. FAILURE TO SUPERVISE
Carroll alleges that Hammett "failed to properly supervise the situation by having teachers on the lookout and properly stationed in areas to prevent" Stone's assault and battery. It is well established that the supervision of students is a discretionary function. See L.S.B., 659 So.2d at 44; Coyle v. Harper, 622 So.2d 302, 303
(Ala. 1993); Kroger v. Davis, 622 So.2d 303, 304 (Ala. 1993); see also Foley v. Taylor, 695 So.2d 1196, 1199 (Ala.Civ.App. 1997) ("[W]ell-settled Alabama law provides that supervision of students is a discretionary act."). In his affidavit in support of his and the Board's motion for summary judgment, Hammett stated that he was not guided by any board-of-education policy in determining what disciplinary measures to take under the particular circumstances; instead, he said, disciplinary matters were left to his judgment and discretion. In making his judgment that Stone would not attack Carroll and that no further action was needed, Hammett relied on his many years of education, on his training and experience as an educator and administrator, on his investigation of the incident and his questioning and observing the students involved, on his knowledge of their past disciplinary records, and on Stone's assurance to him that he would not attack Carroll. Hammett also testified in his deposition that Stone and Carroll had no more classes together that day and that during class changes and breaks teachers are stationed in the hallways and break areas to supervise the students. Several teachers were stationed in the patio area where Stone ambushed Carroll. We conclude that Hammett was performing a discretionary function when he evaluated the situation and was exercising his judgment in handling Stone's threats against Carroll. See Byrd v.Sullivan, 657 So.2d 830, 833 (Ala. 1995).
 B. § 16-1-24.1(b)
Carroll contends that under Ala. Code 1975, § 16-1-24.1(b), Hammett had no discretion when he learned that Stone had threatened Carroll. Specifically, Carroll asserts that § 16-1-24.1(b) required Hammett to notify law-enforcement officials and to suspend Stone immediately. We disagree.
Section 16-1-24.1(b) provides:
 "(b) The principal shall notify appropriate law enforcement officials when any person violates local board of education policies concerning drugs, alcohol, weapons, physical harm to a person, or threatened physical harm to a person. If any criminal charge is warranted arising from the conduct, the principal is authorized to sign the appropriate warrant. If that person is a student enrolled in any public school in the State of Alabama, the local school system shall immediately suspend that person from attending regular classes and schedule a hearing at the earliest possible date, which shall not be later than five school days. The decision to suspend or initiate criminal charges against a student, or both, shall include a review and consideration of the student's exceptional status, if applicable, under Chapter 39, or appropriate federal statutory or case law."
Implicit in the § 16-1-24.1(b) requirement that the principal notify law-enforcement officials is the requirement that the student first be found to have violated one of the specified policies of the local board of education. This construction of the statute *Page 912 
is supported by subsection (c), which provides that "if a person isfound to have violated a local board of education policy concerning drugs, alcohol, weapons, physical harm to a person, or threatened physical harm to a person," then the person cannot be readmitted to school unless certain conditions have been met. Ala. Code 1975, § 16-1-24.1(c). In determining whether a student has violated one of the local board of education's policies specified under § 16-1-24.1(b), the principal is engaged in the performance of a discretionary function, because making that determination requires the principal to use his personal judgment. No evidence in the record indicates that Stone was found to have violated Board policy. The Calhoun County Board of Education's policies concerning physical harm to a student or threatened physical harm to a student are not part of the record, and Hammett testified that in his judgment Stone's threat to Carroll did not violate Board policy or Pleasant Valley High School's code of student conduct. Similarly, a local school system, in deciding under § 16-1-24.1(b) whether to suspend a student who violates the local board's policies concerning drugs, alcohol, weapons, physical harm to a person, or threatened physical harm to a person, is exercising a discretionary function. The last sentence of § 16-1-24.1(b) evidences the discretionary nature of that decision by requiring the local school system to consider a student's "exceptional status" and applicable state and federal statutory law and caselaw in determining whether to suspend a student.
 IV.
No evidence in the record supports Carroll's argument that Hammett acted in bad faith or beyond his authority. Hammett promptly investigated Carroll's complaint. Likewise, no evidence suggests that Hammett willfully or maliciously caused Carroll's injuries. Hammett testified that he believed the situation had been defused when he warned Stone and Stone assured him that he would not attack Carroll. In handling the situation and deciding what disciplinary action was appropriate under the circumstances, Hammett was acting within his authority as assistant principal.
 V.
In conclusion, we hold that Hammett was performing a discretionary function in handling the situation between Stone and Carroll, in determining whether Stone had violated Board policy, and in deciding the appropriate disciplinary action to take under the circumstances. Therefore, Hammett is entitled to discretionary-function immunity. Accordingly, the trial court properly entered the summary judgment in favor of Hammett and the Board on Carroll's tort claims.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, Lyons, and Brown, JJ., concur.
Johnstone, J., concurs in the result.
[1] Ms. Slaught's last name is spelled "Slaght" in the complaint; however, it is spelled "Slaught" elsewhere in the record and in the parties' briefs.
[2] Carroll concedes in his brief that the summary judgment was proper as to all claims against the Board and as to the § 1983 claim against Hammett. Therefore, we do not address those claims.
[3] Carroll did not allege in his complaint that Hammett had acted in bad faith or beyond his authority.